No. 25–11210

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

ASHLEY CULLEY,

Plaintiff-Appellee,

v.

JEFF LYDE; KENNY NASH

Defendants-Appellants.

---

On Appeal from the United States District Court for the
Northern District of Texas, Wichita Falls Division
Civil Action No. 7:22-cv-98

---

# BRIEF OF APPELLANT NASH

---

Christopher A. Klement
chris@oknlegal.com
**OLDHAM, KLEMENT & NOGA, PLLC**
8150 N Central Expy, Suite 1000
Dallas, Texas 75206
Telephone: (214) 838-8400
Facsimile: (214) 446-7145

ATTORNEY FOR DEFENDANT-APPELLANT
KENNY NASH

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant Kenny Nash certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1. Ashley Culley (Plaintiff-Appellee)
2. James P. Robert; Palmer Perlstein (Counsel for Appellee Culley)
3. Jeff Lyde; Kenny Nash (Defendants-Appellants)
4. Thomas P. Brandt, John D. Husted; Thompson, Coe, Cousins & Irons, L.L.P. (Counsel for Appellant Lyde)
5. Christopher A. Klement; Oldham, Klement & Noga, PLLC (Counsel for Appellant Nash)
6. Texas Association of Counties Risk Management Pool (Risk Pool for Appellants Lyde and Nash)

*/s/ Christopher A. Klement*
Attorney for Appellant Nash

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Kenny Nash requests oral argument as he believes it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......... II

STATEMENT REGARDING ORAL ARGUMENT .......... III

TABLE OF CONTENTS .......... IV

TABLE OF AUTHORITIES .......... VI

JURISDICTIONAL STATEMENT .......... 1

ISSUES PRESENTED FOR REVIEW .......... 2

STATEMENT OF THE CASE .......... 3

SUMMARY OF THE ARGUMENT .......... 9

ARGUMENT .......... 12

1. Standard of Review .......... 12

2. The Trial Court erred by making improper and unsupported assumptions and inferences to impute knowledge of the February 8, 2021 email to Appellant Nash. .......... 13

3. The Trial Court erred by finding Appellant Nash's conduct was not objectively reasonable in the light of clearly established law. .......... 23

4. Because the clearly established law was defined with a high level of generality, the Trial Court erred in denying that Appellant Nash was not entitled to qualified immunity. .......... 30

5. The United States Supreme Court has not clearly established a Fourth Amendment cause of action under 42 U.S.C. § 1983 for an alleged *Franks* violation. .......... 32

CONCLUSION ........................................................................................................ 32

CERTIFICATE OF COMPLIANCE ........................................................................................ 33

CERTIFICATE OF SERVICE ............................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......... 24, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 18

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) .......... 30

*Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245 (5th Cir. 2005) .......... 24

*Brumfield v. Hollins*, 551 F.3d 322 (5th Cir. 2008) .......... 26

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015) .......... 23, 24

*Cass v. City of Abilene*, 814 F.3d 721 (5th Cir. 2016) .......... 30

*Davis v. Hodgkiss*, 11 F.4th 329 (5th Cir. 2021) .......... 1, 31

*Favela v. Collier*, 91 F. 4th 1210 (5th Cir. 2024) .......... 19

*First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253 (1968) .......... 18

*Freeman v. TDCJ*, 369 F .3d 854 (5th Cir. 2004) .......... 19

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212 (5th Cir. 1985) .......... 20

*Johnson v. Jones*, 515 U.S. 304 (1995) .......... 14

*Juarez v. Aguilar*, 666 F.3d 325 (5th Cir. 2011) .......... 12, 13

*Keller v. Fleming*, 952 F.3d 216 (5th Cir. 2020) .......... 26

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) .......... 12, 13

*Little v. Liquid Air Corp.*, 37 F. 3d 1069 (5th Cir. 1994) .......... 15, 18

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ....................15, 18, 19

*Malley v. Briggs*, 475 U.S. 335 (1986)....................25

*Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) ....................25, 26

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)....................14

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) ....................25

*Mullenix v. Luna*, 577 U.S. 7 (2015)....................30

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012)....................26

*Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999)....................24

*Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021) ....................26

*Thompson v. Upshur County, Tex.*, 245 F.3d 447 (5th Cir. 2001)....................24, 29

*Vann v. City of Southaven*, 884 F.3d 307 (5th Cir. 2018) ....................30

*White v. Pauly*, 580 U.S. 73 (2017) ....................30

**Rules**

Fed. R. Civ. P. 56....................15

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because it is an appeal of an order that denied Appellant Nash's assertion of qualified immunity.[1] Appellant Nash timely appealed by filing his notice of appeal within 30 days of the Trial Court's order of September 30, 2025.[2]

1 ROA.1373–1387; *see Davis v. Hodgkiss*, 11 F.4th 329, 332 (5th Cir. 2021).

2 ROA.1391.

## ISSUES PRESENTED FOR REVIEW

In this appeal challenging the denial of summary judgment asserting qualified immunity, the following issues are presented for review:

1. Whether, as a matter of law, the Trial Court made improper assumptions and inferences, which were unsupported by the summary judgment record, to impute knowledge of allegedly exculpatory information onto Appellant Nash?

2. Whether, as a matter of law, Appellant Nash's alleged conduct was objectively unreasonable in light of the clearly established law?

3. Whether the clearly established law has been improperly defined with a high level of generality?

4. Whether a Fourth Amendment claim relying on the *Franks* theory and brought under 42 U.S.C. § 1983 has been recognized by the United States Supreme Court?

## STATEMENT OF THE CASE

This case arises from an arrest made for Tampering with a Government Record. At issue is whether Appellee created documents (network maps) as part of two technology audits showing only one computer had access to or stored sensitive data when as many as 12 computers accessed or stored such data.

In 2009, Appellee was hired by Clay County, Texas, to perform contract information technology work, while also remaining in a full-time Assistant Director position with Wichita County.[3] Appellee was employed by Clay County as its Information Technology Administrator.[4] As the IT Administrator, Appellee was responsible for ensuring the Clay County Sheriff's Office's ("CCSO's") server and computer network complied with Texas Department of Public Safety's ("DPS") requirements for the use of the Criminal Justice Information Services database ("CJIS").[5] CJIS provides a centralized source of criminal justice data to agencies and authorized third parties throughout the United States, including the CCSO.[6] To have access or manage this highly sensitive information, a law enforcement agency must have processes and systems that comply with CJIS policies and regulations for

---

[3] ROA.526, ¶ 8.

[4] ROA.525.

[5] ROA.526, ¶ 9.

[6] ROA.526-27, ¶ 10, 13.

wireless networking, data encryption, and remote access.[7] DPS serves as the CJIS Systems Agency for the State of Texas and is responsible for auditing local agencies to ensure compliance with CJIS policies and regulations.[8]

In 2016 and 2019, DPS audited Clay County.[9] As part of both audits, Appellee submitted network maps showing only one computer at the CCSO with access to CJIS.[10]

In 2020, Sheriff Lyde was elected as the Sheriff for Clay County, Texas.[11] After his election, Sheriff Lyde made the decision to transition the CCSO to a new software to increase the access to CJIS.[12] Specifically, Sheriff Lyde decided to expand the access to CJIS information on Mobile Data Terminals ("MDTs") in CCSO vehicles, which included using a new software.[13] As part of this process, Sheriff Lyde appointed Captain Lanny Evans to be the project manager.[14] In order

---

7 ROA.527, ¶ 11.

8 *See* TEX. DEP'T OF PUB. SAFETY, https://www.dps.texas.gov/section/crime-records-service/welcome-tx-cjis-security-office (last visited Apr. 16, 2025).

9 ROA.528, ¶ 20.

10 ROA.528, ¶ 22.

11 ROA.528, ¶ 26.

12 ROA.529, ¶ 34.

13 ROA.529, ¶ 34; ROA.1122, ¶ 7.

14 ROA.530, ¶ 39; ROA.1122, ¶ 8.

to get MDTs in the CCSO vehicles, Captain Evans was required to develop a network site map and submit it to DPS.[15]

In developing the new network site map, Captain Evans discovered that eight to ten computers inside the CCSO headquarters were accessing and storing CJIS data.[16] As part of the transition process under Sheriff Lyde, including using new software, the CCSO did not add any new CJIS access to any computers in the CCSO headquarters.[17] At that time, Sheriff Lyde learned that the CCSO network site maps prepared and submitted by Appellee as part of the 2016 and 2019 DPS audits only showed **one** computer inside the CCSO headquarters as accessing CJIS information.[18]

Based on the discrepancies in number of computers accessing CJIS data, Sheriff Lyde decided that an investigation should be opened.[19] Sheriff Lyde instructed Appellant Nash to conduct an investigation of Appellee's preparation of the network maps submitted as part of the 2016 and 2019 DPS audits.[20] Appellant Nash investigated whether Appellee accurately reported the number of computers

15 ROA.1122–23, ¶ 9.

16 ROA.1123, ¶¶ 10–11.

17 ROA.1123, ¶ 12.

18 ROA.1123, ¶ 12.

19 ROA.1123, ¶ 13.

20 ROA.1116, ¶ 5; ROA.1123–24, ¶ 14.

with access to CJIS on the 2016 and 2019 network maps.[21] At the time, Appellant Nash worked as the sole Investigator for the CCSO and had over a decade of experience in conducting investigations.[22]

As part of his investigation, Appellant Nash learned that the network maps submitted to DPS in 2016 and 2019 were created by Appellee as part of the IT work she performed for CCSO.[23] Appellant Nash also spoke with CCSO deputies who were employed by CCSO in 2016 and 2019.[24] Those deputies informed him that multiple CCSO computers in 2016 and 2019 contained and were used to access CJIS data.[25]

As part of his investigation, Appellant Nash also spoke with Captain Evans about the computers with access to CJIS data.[26] Captain Evans informed Appellant Nash that 10 to 12 CCSO computers were used to access CJIS data.[27] Captain Evans also stated that the 2016 and 2019 network site maps were inaccurate with regard to the computers with access to CJIS data.[28] Appellant Nash also learned that

---

21 ROA.1116–18, ¶¶ 5–13.

22 ROA.1115, ¶¶ 2–3; ROA.1123–24, ¶ 14.

23 ROA.1116, ¶ 7.

24 ROA.1117, ¶ 8.

25 *Id.*

26 ROA.1117, ¶ 9.

27 *Id.*

28 *Id.*

Appellee had used "end of life" equipment from the Wichita Falls Sheriff's Office at the CCSO.[29]

In addition, Appellant Nash spoke with DPS CJIS Technical Auditor Linda Sims.[30] She informed Appellant Nash that the 2019 network site map only reflected one computer that contained CJIS data.[31] Auditor Sims further stated that Appellee drew the 2019 network site map and is the person responsible for submitting it for the audit.[32] Auditor Sims also informed Appellant Nash that submitting a network site map with "end of life" equipment would cause an agency to not pass an audit and that a possible reason to leave "end of life" equipment off a network site map would be that the person preparing the map would know the agency would not pass an audit with the "end of life" equipment listed.[33]

On February 8, 2021, Auditor Sims wrote an email with a subject line of "Network Configuration," which was sent to Sheriff Lyde with Captain Evans and Appellee copied.[34] The email and its contents were not shared with Appellant Nash as part of his investigation.[35] Appellant Nash did not intentionally omit any of the

---

29 *Id.*

30 ROA.1117, ¶ 10.

31 *Id.*

32 *Id.*

33 *Id.*

34 ROA.536–37, ¶ 54.

35 ROA.1117, ¶¶ 11–12; ROA.1124, ¶¶ 16–18; ROA.1125, at ¶ 22.

statements made by Auditor Sims in her February 8, 2021 email because he did not receive the email and no one conveyed her statements to him prior to Appellee's arrest.[36]

During his investigation, Appellant Nash attempted to interview Appellee.[37] However, she refused to be interviewed and did not otherwise provide him with a statement.[38]

At the conclusion of his investigation, Appellant Nash reasonably believed that probable cause existed that Appellee violated Texas Penal Code § 37.10 (Tampering with Governmental Record) by knowingly making a false entry on the 2019 network site map submitted during a DPS audit, which makes it a government record and submitted that site map with knowledge of its falsity and with intent that it be taken as a genuine government record because his investigation found that: (i) multiple computers were used to access CJIUS data at the time of the 2019 audit, (ii) Appellee, who was responsible for creating the maps, created a network site map that only reflected one computer that contained CJIUS data when there were up to 10 to 12 other computers, (iii) Appellee used "end of life equipment" from her the Wichita Fall's Sheriff's Office at CCSO, (iv) submitting a network site map with "end of life" equipment would cause an agency not to pass an audit, thus giving

36 ROA.1117, ¶ 12.

37 ROA.1118, ¶ 13.

38 *Id.*

Appellee a possible reason to not include the equipment on the site map.[39] On March 22, 2021, Appellant Nash submitted an Affidavit for Warrant of Arrest and Detention for Appellee ("Warrant Affidavit") for the crime of Tampering with a Government Record.[40] A warrant was issued on the same day.[41]

## SUMMARY OF THE ARGUMENT

The Trial Court erred when it denied Appellant Nash's entitlement to qualified immunity from Appellee's sole remaining Fourth Amendment claim brought under the *Franks* theory. As a matter of law, Appellant Nash's preparation and submittal of the challenged warrant affidavit was not objectively unreasonable in the light of clearly established law.

First, the undisputed summary judgment record conclusively proves that Appellant Nash had no knoweldge of the allegedly "exculpatory information," which Appellee claims he omitted. Namely, Appellee alleges that information in an email dated February 8, 2021, negates any probable cause by showing that only one computer had access to CJIS data. It is undisputed that Auditor Sims did not send the original email to Appellant Nash. Moreover, based on the sworn testmony of both Appellants, then-Sheriff Lyde did not share the February 8, 2021 email or its

39 ROA.1116–19, ¶¶ 7–10, 14, 20–22.

40 ROA.539, ¶ 57; ROA.1116, ¶ 4.

41 ROA.547.

contents with Appellant Nash. No other summary judgment evidence shows, directly or indirectly, that Appellant Nash had any knowledge of the February 8, 2021 email when he completed his warrant affidavit. Without knowledge of the February 8, 2021 email, Appellant Nash could not have been objectively unreasonable by omitting it from his warrant affidavit. In denying Appellant Nash's entitlement to qualified immunity, the Trial Court relied on assumptions based improperly on the "unnatural" language of Nash's warrant affidavit.

Next, whether Appellant Nash had knowledge of the February 8, 2021 email is immaterial to consideration of Appellee's *Franks* claim because the information contained therein was not exculpatory. In the email, Auditor Sims argued that Appellee properly completed the network maps because Auditor Sims was informed only one computer had access to CJIS data. Yet, this underlying belief of Auditor Sims was directly contradicted by information obtained by Appellant Nash during his investigation. Instead, other deputies with knowledge of the historical use of computers to access and store CJIS data in the Clay County Sheriff's Office told Appellant Nash that more than one and up to 12 computers were used to access and store the sensitive data. Because the results of Appellant Nash's investigation directly refuted the underlying assumption in the February 8, 2021 email—and provided him with information establishing probable cause—the arguments in the email were immaterial to the question of probable cause. At the very least, Appellant

Nash was not objectively unreasonable in believing as much when drafting his warrant affidavit.

In addition, the Trial Court erred in denying qualified immunity by improperly defining the clearly established law for a *Franks* claim with a high level of generality. Appellee's summary judgment briefing failed to provide the Trial Court with appropriate case law defining the clearly established law in a manner particularized to the facts of this case. Instead, the Trial Court's challenged order defines the clearly established law using the high level elements for a *Franks* claim. Because neither Appellee nor the Trial Court sufficiently provided clearly established law, Appellant Nash is entitled to qualified immunity as a matter of law.

Finally, the Trial Court erred in denying qualified immunity of Appellee's *Franks* claim because the United State Supreme Court's holding in *Franks v. Delaware* is limited to the criminal context and did not clearly establish a civil cause of action. The United States Supreme Court has not established a Fourth Amendment cause of action under 42 U.S.C. § 1983 for an alleged *Franks* violation. Appellant Nash adopts and joins the argument briefed by Appellant Lyde that the clearly established law has not given rise to a § 1983 claim for an alleged *Franks* claim.

For these reasons, the Trial Court committed reversible error by denying Appellant Nash's assertion of qualified immunity. Therefore, Appellant Nash asks

this Court to reverse the Trial Court's ruling on his Motion for Summary Judgment and render judgment in his favor.

## ARGUMENT

### I. Standard of Review

This Court may exercise jurisdiction over an interlocutory appeal of a denial of summary judgment based on qualified immunity.[42] "Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, . . . the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review."[43] The jurisdiction to review extends "to the extent that [the denial of summary judgment] turns on an issue of law."[44] When the issue on appeal is the denial of summary judgment asserting qualified immunity, this Court has jurisdiction to hear challenges about whether "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law."[45] The Court "may consider the 'purely legal question' of 'whether a given course of conduct would be objectively unreasonable in light of

---

42 *Davis v. Hodgkiss*, 11 F.4th 329, 332 (5th Cir. 2021).

43 *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

44 *Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011).

45 *Kinney*, 367 F.3d at 346.

clearly established law.'"[46] The district court's conclusions concerning the legal consequences of the facts is reviewed *de novo*.[47]

### 2. The Trial Court erred by making improper and unsupported assumptions and inferences to impute knowledge of the February 8, 2021 email to Appellant Nash.

The Trial Court erred in denying Appellant Nash's Motion for Summary Judgment because its reasoning for doing so was based on the assumption that Appellant Nash had knowledge of the contents of the February 8, 2021 email that technical auditor Linda Sims sent to co-Appellant Lyde when there is no evidence in the record to suggest that such information was ever communicated to Appellant Nash. Specifically, there are no communications or facts in the record establishing that Appellant Nash ever received, saw, or otherwise had any knowledge whatsoever of the alleged exculpatory information that the February 8, 2021 email contained. However, the Trial Court imputed this knowledge to Appellant Nash in its analysis when considering his Motion for Summary Judgment based on unsupported inferences from the warrant affidavit's language rather than facts from the record, which is impermissible under Rule 56.

The United States Supreme Court has held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an

---

[46] *Davis*, 11 F.4th at 332 (quoting *Kinney*, 367 F.3d at 347).

[47] *Juarez*, 666 F.3d at 331 (citing *Kinney*, 367 F.3d at 349).

appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[48] However, the Supreme Court explicitly limits such appeals to those challenging legal issues and not a district court's determination about what factual issues are genuine.[49] Therefore, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."[50]

Appellant Nash does not challenge the existence of a genuine factual dispute, rather, this issue of his appeal turns on the following matter of law: whether the Trial Court's reasoning for denying his Motion for Summary Judgment was based on an inference that he had knowledge of the contents of the February 8, 2021 email instead of the evidentiary record as was required under Rule 56.

This Court has held that "Rule 56 means what it says": summary judgment must be granted where the record shows no genuine dispute of material fact.[51] Although the Trial Court was permitted to view the evidence in the light most

---

[48] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

[49] *Johnson v. Jones*, 515 U.S. 304, 313 (1995) (discussing *Mitchell*, "And the Court, in its opinion, explicitly limited its holding to appeals challenging, not a district court's determination about what factual issues are 'genuine,' Fed. Rule Civ. Proc. 56(c), but the purely legal issue what law was 'clearly established.'").

[50] *Id.* at 319–20.

[51] *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. P. 56(c)).

favorable to the non-movant, any such reasonable inferences made must be based on facts established by the evidentiary record.

The Supreme Court clarifies this point in *Lujan v. Nat'l Wildlife Fed'n*, holding that, for the purposes of Rule 56, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied."[52] The Court in *Lujan* distinguishes this from simply "assuming that general averments embrace the specific facts needed to sustain the complaint" and emphasizes that "[i]t will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they would generally allege," thus converting the plaintiff's Rule 56 to a "circular promenade."[53]

This is analogous to what the Trial Court did in the present case because throughout the Trial Court's Order denying Defendants' Motions for Summary Judgment, the Trial Court presumes missing facts about Appellant Nash having knowledge of the allegedly exculpatory information contained in the February 8,

---

[52] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (quoting Fed. R. Civ. P. 56(e))(internal quotation marks omitted).

[53] *Id.* ("It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is.").

2021 email based on gaps in Plaintiff's Second Amended Complaint[54] and justifies it by calling it a "reasonable inference" in favor of the non-moving party when really it is "simply assuming that general averments embrace the specific facts needed to sustain the complaint," which according to the Supreme Court creates a circular promenade and is an incorrect application of Rule 56(e).

In its order denying summary judgment, the Trial Court states the following:

> As explained previously, there is a dispute of material fact as to whether Lyde and Nash discussed the contents of Sims's February 8 email. Reading the evidence in light most favorable to Culley and drawing all reasonable inferences as required at the summary judgment stage, the Court agrees with Culley. **The language in Defendant Nash's warrant affidavit leads to a reasonable inference that the affidavit was crafted to avoid directly stating a falsehood: that end-of-life equipment was left off of the 2016 or 2019 diagrams**.[55]

The above inference violates Rule 56(e) according to the Supreme Court's ruling in *Lujan* because it presumes a fact needed to sustain the complaint that is not established by the evidentiary record. Specifically, that Appellant Nash has knowledge of the February 8, 2021 email and its contents at the time the warrant affidavit was written.

The evidentiary record demonstrates the following: (1) the February 8, 2021 email was not sent Appellant Nash, (2) no documents have been produced showing

[54] ROA.1373 (FN.1 says "All undisputed facts pertaining to Defendant's motion are drawn from Plaintiff's Second Amended Complaint, unless otherwise specified. . .")

[55] ROA.1385 (emphasis added).

that Appellant Nash had any knowledge of the information conveyed by that email, (3) no communications have been identified in which that information was shared with Appellant Nash, (4) co-Appellant Lyde denied providing Appellant Nash with any documents or information for use in the warrant affidavit, which would include the email—and denied assisting with the same in his sworn declaration, and (5) Appellant Nash denied knowing about the email and its contents in his sworn declaration.

Nothing in the summary judgment record sets forth a single fact to support an inference that Appellant Nash had knowledge of the contents of the February 8, 2021 email. To put it simply, there is no fact controversy to resolve in favor of the nonmoving party, particularly when the Trial Court must decide as a matter of law whether Appellant Nash's conduct was objectively unreasonable in the light of the clearly established law.

Based on the Supreme Court's holding in *Lujan*, the Trial Court only should have presumed that Appellant Nash had knowledge of the February 8, 2021 email and its contents if the facts of Appellant Nash specifically contradicted the facts set forth by Appellee. The Fifth Circuit echoes this sentiment in *Little v. Liquid Air Corp.*:

> We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however,

> in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.[56]

But as demonstrated above, there were no facts for the Trial Court to resolve in favor of Appellee under Rule 56(e). Rather, Appellee attempted to impute knowledge to Appellant Nash through conclusory assertions, repeatedly stating in her Second Amended Complaint that "Nash would have known [of the February 8, 2021 email and its contents and that certain statements in the affidavit were false or misleading despite not being involved in any of the communications or IT transitions himself] due to him receiving all of his information from Lyde."[57]

The object of Rule 56(e) is "not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."[58] According to this Circuit's precedent: "An assertion is conclusory if it relies on inferences without also setting forth the facts that support those inferences."[59] Appellee's assertions that

---

[56] *Little*, 37 F. 3d at 1075 (citing *Lujan*, 497 U.S. at 888) (resolving actual disputes of material facts in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint. . . . It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege").

[57] ROA.572, ¶¶ 177–78; ROA.578, ¶¶ 196–97; ROA.581, ¶¶ 207-8; ROA.597, ¶ 274; ROA.603, ¶ 292; ROA. 606, ¶ 302.

[58] *Lujan*, 497 U.S. at 888 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(quoting *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968)("The plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'").

[59] *Favela v. Collier*, 91 F. 4th 1210, 1213 (5th Cir. 2024) (citing *Lujan*, 497 U.S. at 898–99) (concluding that assertions that an organization's mission had been "significantly impaired," its interests "had been injured," and it "would be irreparably harmed" were too conclusory to establish Article III standing on summary judgment); see also Conclusory, Black's Law

Appellant Nash had knowledge of the February 8, 2021 email and its contents and that certain statements in the affidavit were false or misleading were conclusory because they rely on the inference that co-Appellant Lyde told Appellant Nash, and no facts are presented to support that assertion. To the contrary, Appellee presents facts that support the opposite conclusion, admitting that "Nash was not involved in any of the communications or IT transitions himself" in all instances.[60] Further, Appellee could not point to any communications in which co-Appellant Lyde told Appellant Nash about the February 8, 2021 email and produced no documentation establishing that such conversations between them ever occurred.[61]

This Court has explained that "'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' cannot on their own create a genuine issue of material fact,"[62] and "[u]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."[63]

---

Dictionary (11th ed. 2019) ("Expressing a factual inference without stating the underlying facts on which the inference is based").

60 ROA.572, ¶ 177; ROA.578, ¶ 196; ROA.581, ¶ 207; ROA.597, ¶ 274; ROA.603, ¶ 292; ROA. 606, ¶ 302.

61 ROA.1108-09; ROA. 1130-32, Interrogatory Nos. 3-8, 12.

62 *Favela*, 91 F. 4th at 1213 (citing *Freeman v. TDCJ*, 369 F .3d 854, 860 (5th Cir. 2004)); and see *Little*, 37 F. 3d at 1075 ("This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (internal quotation marks and citations omitted).

63 *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

By extension, the Trial Court was not permitted to replace the conclusory assertions of Plaintiff's Second Amended Complaint with its own conclusory assertion based on the language of the affidavit being "unnatural" without having the factual groundwork to establish that Appellant Nash had knowledge of the February 8, 2021 email and its contents at the time the warrant affidavit was written. As discussed above, the Supreme Court, Fifth Circuit, and Rule 56 are all clear that only a showing of fact can be resolved in favor of the nonmoving party. But that is what the Trial Court did, and by substituting an inference for a fact, it tainted its analysis under Rule 56 to the extent that it was the sole reasoning for denying Appellant Nash's Motion for Summary Judgment on every issue.[64]

[64] ROA. 1382 (The Trial Court ignores the fact establishing that that the February 8, 2021 email was not sent to Appellant Nash and imputes knowledge of the February 8, 2021 email and its contents anyway because the "unnatural language of Nash's final affidavit suggests he knew of the email's content because it avoided mentioning end-of-life equipment directly." But even if co-Appellant Lyde was directing him as to what to write, as Appellee alleges, then it would only show that Appellant Lyde had knowledge, not Appellant Nash.); ROA. 1383–84 (The Trial Court concludes there is a genuine dispute of material fact as to whether both defendants omitted material facts that were necessary to the finding of probable cause, but even if those facts were material and necessary to the finding of probable cause, which is a low bar, it is impossible to "omit" information you do not have knowledge of, and this conclusion of the Trial Court therefore would not have been possible without such imputation of knowledge.); ROA. 1385 (Trial Court finds that "there is a genuine material factual dispute as to whether Lyde and Nash omitted the exculpatory evidence with at least reckless disregard for the truth" but again, even if the evidence is exculpatory, which Appellant Nash does not concede, he could not have omitted what he did not have knowledge of, and that was impermissibly imputed to him by the Trial Court.); ROA. 1386 (The Trial Court concludes that there is a genuine issue of material fact whether Appellants Nash and Lyde violated Culley's Fourth Amendment right to be free from arrest without probable cause to the extent she can beat qualified immunity at this stage, but the elements would require Appellant Nash to knowingly omit exculpatory information contained in the February 8, 2021 email with at least reckless disregard for the truth, and in order for the Trial Court to come to this conclusion it had to have imputed knowledge of the February 8, 2021 email to Appellant Nash); ROA. 1386–87 (Trial Court concludes that the Appellant Nash's conduct was objectively unreasonable under

For example, the Trial Court concluded in the Order that "There exist genuine disputes of material fact as to whether defendants omitted material facts that were necessary to a finding of probable cause," and that "whether Nash omitted exculpatory context is a genuine question of material fact."[65] But by definition, Appellant Nash could only omit what he already had knowledge of or "reasonably exclude"[66] something he already had access to in the first instance, and as discussed above, the record does not establish that Appellant Nash had knowledge of or access to the February 8, 2021 email. The Trial Court only reached this conclusion about Appellant Nash by impermissibly imputing knowledge of the contents of the February 8, 2021 email to him in violation of Rule 56.

The Trial Court admits "[t]he entire basis for probable cause in the arrest warrant hinged on findings contrary to the February 8 email" and concludes "Culley

clearly established law because "[a]t the time of the incident, it was clearly established that filing—or pushing subordinates to file—false affidavits contrary to known exculpatory evidence violates clearly established law" and "it would have been apparent to a reasonable officer when such conduct was undertaken that omitting material facts in an arrest affidavit would violate the Fourth Amendment", which is a conclusion that also requires an imputation of knowledge of the February 8, 2021 email to Appellant Nash.).

[65] ROA.1383–84.

[66] ROA.1384 (The Trial Court wrote in the Order: "In their view, the email is not exculpatory because it is based on a false premise: that only one computer had access to the network in 2019. However, Nash's conversation with Captain Evans led him to believe that multiple computers had access to the CJIS in 2019, contrary to Sim's email. Accordingly, Nash reasonably excluded the email from his warrant affidavit and found probable cause regardless." The Order cites ROA.1106 and ROA.1130–32, but Appellant Nash never claimed to have excluded the email because he never claimed to have knowledge of or access to the contents of the February 8, 2021, email in the first instance.).

has raised a genuine material factual dispute as to whether Lyde and Nash omitted the exculpatory evidence with at least reckless disregard to the truth because a reasonable jury could conclude that Nash made materially false statements and omissions in the warrant affidavit at the direction of Lyde."[67] But this is again based on an impermissible imputation of knowledge to Appellant Nash and not on the record. If anything, such imputation goes against the record.

The Trial Court then moves onto the issue of whether Appellant Nash's conduct was objectively unreasonable. Here, the Trial Court concludes that "[a]t the time of the incident, it was clearly established that filing—or pushing subordinates to file—false affidavits contrary to known exculpatory evidence violates clearly established law," and that "it would have been apparent to a reasonable officer when such conduct was undertaken that omitting material facts in an arrest affidavit would violate the Fourth Amendment."[68]

This conclusion again takes for granted that Appellant Nash had knowledge of the February 8, 2021 email and its contents, and the Trial Court surmised that through speculation without having a basis to do so in the record. The Trial Court admits as much by pointing to the "unnatural" wording of the affidavit as its sole reason for imputing such knowledge to Appellant Nash.[69]

---

67 ROA. 1385–86.

68 ROA. 1386–87.

69 *See* ROA.1382, 1385.

The Trial Court erred in denying Appellant Nash's Motion for Summary Judgment because but for the impermissible substitution of inference for fact and imputation of knowledge of the February 8, 2021 email and its content to Appellant Nash in violation of Rule 56, the motion would have been granted, and rightfully so.

**3. The Trial Court erred by finding Appellant Nash's conduct was not objectively reasonable in the light of clearly established law.**

In Appellant Nash's Motion for Summary Judgment, he pled the defense of qualified immunity and moved for dismissal of Plaintiff-Appellee's sole remaining claim based on that doctrine.[70] To determine whether a peace officer is entitled to qualified immunity, a court must conduct a two-prong inquiry.[71] A court must ask: (1) whether the undisputed facts and the disputed facts constitute a violation of a constitutional right, and (2) whether the defendant's conduct was "objectively reasonable in light of clearly established law."[72]

With regard to the second prong, this Court has held that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at

---

70 ROA.1099–1111.

71 *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

72 *Id.* (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)) (emphasis added).

the time it was taken."[73] This Court has provided the following guidance for considering the second prong:

> For a plaintiff to establish objective unreasonableness and overcome a qualified immunity defense, he must satisfy two inquiries. First, a plaintiff must show "the allegedly violated constitutional rights were clearly established" at the time of the alleged violation. *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999) (quotation omitted) (emphasis omitted in *Palmer*). Second, a plaintiff must demonstrate that "the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Id.*[74]

"A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights."[75] As a general rule, the inquiry under the objective-reasonableness prong is not a fact question for the jury. When evaluating a claim of qualified immunity, the district court must determine the objective reasonableness as a matter of law.[76]

As such, qualified immunity protects a government official from civil damages liability when his actions could at the very least "reasonably have been believed to

---

73 *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 630 (1987)).

74 *Id.*

75 *Thompson*, 245 F.3d at 457.

76 *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

be legal."[77] This protection extends to all government officials, except for the plainly incompetent or those who knowingly violate the law.[78]

This means that, on the second prong of the qualified immunity analysis, if Appellant Nash could have reasonably believed his actions were legal under the law, then summary judgment in favor of Appellant Nash on Appellee's sole remaining claim is proper. Here, the Trial Court improperly held Appellant Nash's conduct was not objectively reasonable as a matter of law.

As a preliminary matter, the Trial Court's underlying consideration of the objective-reasonableness issue mistakenly questions whether a fact-question for the jury exists instead of ruling on objective reasonableness as a matter of law.[79] The Trial Court explains its rationale as follows:

---

[77] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

[78] *Mullenix*, 577 U.S. at 14 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[79] *See Mangieri*, 29 F.3d at 1016 (quoting *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 434–35 (5th Cir. 1993) ("We recently determined that a district court errs in 'holding that the objective reasonableness prong of the qualified immunity standard is generally a factual question for the jury.'(internal citation omitted) Following the Supreme Court's decision in *Hunter v. Bryant*, 502 U.S. 224, 116 L. Ed. 2d. 589, 112 S. Ct. 534, 536–37, (1991), we held that in evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness of the official's act as a matter of law.").

> Thus, under Culley's version of events, a reasonable jury could find that Lyde and Nash's conduct was not objectively reasonable in light of clearly established law at the time. Stated differently, it would have been apparent to a reasonable officer when such conduct was undertaken that omitting material facts in an arrest affidavit would violate the Fourth Amendment.[80]

However, the inquiry under the objective-reasonableness prong is not a fact question for the jury. "Even if genuine disputes of material fact exist concerning the [constitutional] violation, [an officer] is entitled to qualified immunity unless his 'actions were objectively unreasonable in light of clearly established law at the time of the' [conduct]."[81] It is irrelevant whether "a reasonable jury could find that Lyde and Nash's conduct was not objectively reasonable in light of clearly established law at the time," because the correct inquiry is objective reasonableness as a matter of law.[82] Because this issue must be decided as a matter of law, this Court may review the Trial Court's conclusion *de novo*.[83]

Here, as a matter of law, Appellant Nash's challenged conduct (excluding allegedly exculpatory evidence from his warrant affidavit) was not objectively unreasonable. First, due to the imputation of knowledge of the contents of the

---

80 ROA.1387.

81 *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (citing *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

82 *Mangieri*, 29 F.3d at 1016.

83 *See Keller v. Fleming*, 952 F.3d 216, 221 (5th Cir. 2020) ("We review the district court's resolution of these legal issues—the scope of clearly established law and the objective reasonableness of the defendant government officials' actions—de novo.").

February 8, 2021 email to Appellant Nash without the evidentiary basis for doing so, the Trial Court mistakenly concluded, "[a]t the time of the incident, it was clearly established that filing—or pushing subordinates to file—false affidavits **contrary to known exculpatory evidence** violates clearly established law."[84] But this conclusion not only lumps together the actions and knowledge of both defendants, but it also fails to consider whether Appellant Nash could have "reasonably believed his actions were legal under law." As discussed above, the record lacks any summary judgment evidence demonstrating Appellant Nash ever received any information about the February 8, 2021 email. As such, he could not have intentionally or recklessly omitted such information.

In addition, the information in the February 8, 2021 email did not contain any exculpatory evidence. As the summary judgment evidence demonstrates, Appellant Nash conducted a good faith investigation into potentially criminal conduct and accurately included information learned during that investigation into the probable cause affidavit. Specifically, it is undisputed that during his investigation, Appellant Nash spoke with multiple witnesses who had knowledge of which computers had access to CJIS data.[85] Specifically, Appellant Nash spoke with multiple "CCSO deputies who were employed by CCSO in 2016 and 2019 . . . [and] those deputies

---

84 ROA.1386 (emphasis added).

85 ROA.1117, ¶¶ 8–9.

informed [him] that multiple CCSO computers in 2016 and 2019 contained and were used to access to CJIS data."[86]

Assuming *arguendo* that Appellant Nash knew the contents of the February 8, 2021 email, the opinions stated therein were based on underlying facts that were incorrect based on the firsthand statements collected during Nash's investigation. Ms. Sims states, "The 10 or 12 desktops were never discuss[ed] in the previous audits because **I was informed that they did not have access to CJI data**."[87] But in the same email, Ms. Sims goes on to explain that "if an Office[r] save[d] any CJI data in a report such as an FBI number of SID number that is coming from TLETS/NCIC . . . those 10 or 12 desktops must be included in the scope."[88] The alleged "exculpatory evidence" provided by the February 8, 2021 email evaporates if more than one computer had access to CJIS data, and it is undisputed that Appellant Nash's investigation uncovered that this was in fact the case. Therefore—based on the uncontroverted summary judgment evidence—even if Appellant Nash knew every word of the February 8, 2021 email, and there is no evidence in the record establishing that he did, it contained no exculpatory evidence.

---

86 ROA.1117, ¶ 8.

87 ROA.537 (emphasis added).

88 ROA.537

More importantly, given the information available or allegedly available to Appellant Nash, an officer in his shoes could reasonably believe probable cause existed, and such a conclusion would not be objectively unreasonable in light of the clearly established law. In considering the question of reasonableness, this Court should factor in the highly technical nature of the underlying conduct. The subject matter of Appellant Nash's investigation and warrant affidavit was a complex issue of not only technology but also a technical audit. If Appellant Nash misunderstood the technical details of the audit, such a mistake could hardly be considered a reckless act or unreasonable conduct. Such a conclusion ignores the due diligence of Appellant Nash's investigation, which included an attempt to speak with the Appellee herself, which she refused, not the other way around.[89]

To reiterate, "[a] government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights."[90] In other words, unless the evidence can establish that Appellant Nash violated Appellee's rights by knowingly or with reckless disregard for the truth omitting material statements from the affidavit, his conduct was not objectively unreasonable. Because the Trial Court failed to properly consider the objective-reasonableness prong of the

---

[89] *See* ROA.1118, ¶ 13.

[90] *Thompson*, 245 F.3d at 457.

qualified immunity analysis, it erred in its conclusion that Appellant Nash's conduct was "objectively unreasonable." Since the record on appeal conclusively establishes as a matter of law that Appellant Nash's conduct was not objectively unreasonable, this Court should properly reverse and render judgment in favor of Nash.

### 4. Because the clearly established law was defined with a high level of generality, the Trial Court erred in denying that Appellant Nash was not entitled to qualified immunity.

The United States Supreme Court has reiterated on multiple occasions "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"[91] Moreover, a clearly established law "must be 'particularized' to the facts of the case."[92] Additionally, any such existing precedent "must have placed the statutory or constitutional question beyond debate."[93] "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'"[94] If a plaintiff is unable to identify the legal authority demonstrating the clearly established law, "[t]hat alone dooms his case[.]"[95]

91 *See White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam).

92 *White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S. at 640).

93 *Mullenix*, 577 U.S. at 14 (quoting *Ashcroft*, 563 U.S. at 741 (emphasis added)).

94 *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)).

95 *Id.*

Here, when discussing the clearly established law, the Trial Court offered the following description: "At the time of the incident, it was clearly established that filing—or pushing subordinates to file—false affidavits contrary to known exculpatory evidence violates clearly established law."[96] However, this analysis defines the clearly established law with a high level of generality as it restates the general proposition from *Franks v. Delaware*.[97] Relevant to the particularized facts of this case is whether it would be established beyond debate that an officer would know that omitting allegedly exculpatory information violates a plaintiff's Fourth Amendment rights under a *Franks* theory when information obtained during an investigation directly contradicts an underlying assumption of the "exculpatory" information, taking for granted that the record established Appellant Nash had knowledge of the alleged "exculpatory information," which, as discussed above, it does not. If it did though, would such an "omission" reach the level of being material, as is required by *Franks*? Because such a question remains. Appellant Nash was not placed on notice that his alleged conduct was objectively unreasonable in light of the clearly established law.

---

96 ROA.1386.

97 *See Davis*, 11 F.4th at 333 ("To prove such a claim under *Franks*, plaintiffs must show that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause.")

For this reason alone, the Trial Court erred in concluding Appellant Nash was not entitled to qualified immunity and denying his Motion for Summary Judgment.

**5. The United States Supreme Court has not clearly established a Fourth Amendment cause of action under 42 U.S.C. § 1983 for an alleged *Franks* violation.**

For the purposes of judicial efficiency, Appellant Nash joins and adopts the argument presented by Appellant Lyde in Section B(2) of his Brief that a § 1983 Fourth Amendment claim relying on the *Franks* theory has not been recognized by the United States Supreme Court.

## CONCLUSION

For these reasons, Appellant Kenny Nash respectfully requests that this Court reverse the Trial Court's order denying his Motion for Summary Judgment as to Plaintiff-Appellee's *Franks* claim and render judgment in his favor granting qualified immunity as to Plaintiff-Appellee's claim against him.

Respectfully submitted,

By: */s/ Christopher A. Klement*
CHRISTOPHER A. KLEMENT
Texas Bar No. 24090212
chris@oknlegal.com
OLDHAM, KLEMENT & NOGA, PLLC
8150 N Central Expy, Suite 1000
Dallas, Texas 75206
Telephone: (214) 838-8400
Facsimile: (214) 446-7145

ATTORNEYS FOR APPELLANT
KENNY NASH

## CERTIFICATE OF COMPLIANCE

I hereby certify on May 4, 2026, that this document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains **7,535** words. I relied on the word-count feature of Microsoft Word in determining this word count.

By: */s/ Christopher A. Klement*
CHRISTOPHER A. KLEMENT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this brief was served on opposing counsel of record on May 4, 2026, via this Court's ECF system.

By: */s/ Christopher A. Klement*
CHRISTOPHER A. KLEMENT