**Case No. 25-11210**

---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

ASHLEY CULLEY
**PLAINTIFF-APPELLEE**
V.
JEFF LYDE; KENNY NASH
**DEFENDANTS-APPELLANTS**

---

On Appeal from the United States District Court for the Northern District of Texas, Wichita Falls Division Civil Action No. 7:22-cv-98

**APPELLEE'S CONSOLIDATED RESPONSE BRIEF TO APPELLANTS KENNY NASH'S AND JEFF LYDE'S OPENING BRIEFS**

---

**James P. Roberts**
Palmer Perlstein
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: 214-987-4100
Facsimile: 214-922-9900
Email: james@palmerperlstein.com
**Counsel for Appellee**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Ashley Culley** (Plaintiff/Appellee);

2. **James Roberts**, Palmer Perlstein, 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellee at trial and on appeal);

3. **Scott Palmer**, Palmer Perlstein 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellee at trial and on appeal);

4. **Breanta Boss**, Palmer Perlstein, 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellee at trial and on appeal);

5. **Jeff Lyde**, (Defendant/Appellant);

6. **Thomas B. Brandt**, Thompson, Coe, Cousins, & Irons L.L.P. (Attorney for Defendant Jeff Lyde, at trial and on appeal);

7. **John D. Husted**, Thompson, Coe, Cousins, & Irons L.L.P. (Attorney for Defendant Jeff Lyde, at trial and on appeal);

8. **Kenny Nash**, (Defendant/Appellant);

9. **Christopher A. Klement**, Oldham, Klement & Noga, PLLC(Attorney for Defendant Kenny Nash, at trial and on appeal);

10. **The Honorable Reed O'Conner** (United States District Court Judge for trial);

*/s/ James P. Roberts*
James P. Roberts

**Attorney of Record for Appellee Ashley Culley**

## Statement Regarding Oral Argument

Appellee requests oral argument. Appellants devote substantial portions of their briefs to challenging factual inferences and genuine disputes identified by the district court, raising threshold questions concerning this Court's interlocutory jurisdiction. The appeal also presents issues concerning the application of *Franks v. Delaware* and subsequent Fifth Circuit precedent to a § 1983 claim alleging that an arrest warrant was procured through materially false statements and omissions.

Because resolution of the appeal requires careful consideration of the district court's qualified immunity analysis, the materiality of the allegedly omitted information, and the proper scope of interlocutory review, oral argument would materially assist the Court.

# Table of Contents


CERTIFICATE OF INTERESTED PERSONS .......... 2

**STATEMENT REGARDING ORAL ARGUMENT** .......... 3

**Table of Contents** .......... 4

**Table of Authorities** .......... 6

**STATEMENT OF JURISDICTION** .......... 9

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......... 10

FIRST ISSUE: .......... 10

SECOND ISSUE: .......... 10

THIRD ISSUE: .......... 10

FOURTH ISSUE: .......... 10

STATEMENT OF THE CASE .......... 11

SUMMARY OF THE ARGUMENT .......... 16

ARGUMENT .......... 18

**Standard of Review** .......... 18

**Law for Summary Judgment** .......... 18

**I. This Court lacks jurisdiction to revisit the district court's factual determinations and identification of genuine fact disputes.** .......... 19

a. The factual disputes are material .......... 20

**II. Accepting Culley's version, Appellants violated Culley's Clearly Established Rights Under the Fourth Amendment.** .......... 24

A. Nash violated the Fourth Amendment. .......... 24

B. Lyde violated the Fourth Amendment. .......... 29

C. Appellants' new argument that *Franks* does not support a civil § 1983 claim is forfeited and wrong. .......... 35

**III. The law was clearly established.** .......... 37

**PRAYER AND CONCLUSION** .......... 42

CERTIFICATE OF SERVICE ........................................................................................43
CERTIFICATE OF COMPLIANCE ..................................................................................43

## Table of Authorities

### Cases


*Anderson v. Creighton*,
483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987 ..............................41

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................18

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ...........................38

*Brosseau v. Haugen*,
543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ...............................41

*Crane v. City of Arlington, Texas*,
50 F.4th 453, 467 (5th Cir. 2022) .......................................................................40

*DeLeon v. City of Corpus Christi*,
345 F. App'x 22, 23 (5th Cir. 2009)....................................................................34

*Franks v. Delaware*,
438 U.S. 154, 155–56 (1978)....................................................................... passim

*Guerra v. Castillo*,
82 F.4th 278, 286 (5th Cir. 2023) .................................................... 32, 33, 34, 37

*Hale v. Fish*,
899 F.2d 390, 400 n.3 (5th Cir. 1990) ......................................................... passim

*Hope v. Pelzer*,
536 U.S. 730, 741, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) ....... 38, 41, 42

*Johnson v. Jones*,
515 U.S. 304, 313-20 (1995) ............................................................ 9, 20, 22, 23

*Kinney v. Weaver*,
367 F.3d 337, 346-49 (5th Cir. 2004) ........................................................... passim

*Kohler v. Englade*,
470 F.3d 1104, 113 (5th Cir. 2006) ............................................................. passim

*Melton v. Phillips*,
875 F.3d 256, 262 (5th Cir. 2017) (en banc) ................................................. passim

*Michalik v. Hermann*,
422 F.3d 252, 258 n.5 (5th Cir. 2005) ........................................................... 39, 41

*Morgan v. Swanson*,
659 F.3d 359, 372 (5th Cir. 2011) ......................................................................38

*Poole v. City of Shreveport*,
691 F.3d 624, 627 (5th Cir. 2012........................................................................18

*Reichle v. Howards*,
566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ..............................38

*Rollins v. Home Depot USA*,
8 F.4th 393, 397 (5th Cir. 2021) .........................................................................35

*Roque v. Harvel*,
993 F.3d 325, 335 (5th Cir. 2021) ................................................................. 40, 41

*Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*,
310 F.3d 870, 877 (5th Cir. 2002) .................................................... 18, 32, 41, 42

*Terwilliger v. Reyna*,
4 F.4th 270, 283 (5th Cir. 2021 ...................................................................... passim

*United States v. Chavez-Valencia*,
116 F.3d 127, 130 (5th Cir. 1997) .....................................................................35

*United States v. Zuniga*,
860 F.3d 276, 284 n.9 (5th Cir. 2017) ....................................................................35

*Winfrey v. Rogers*,
901 F.3d 483, 494 (5th Cir. 201..................................................................... passim

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

**ASHLEY CULLEY,**
**PLAINTIFF- APPELLEE**
**V.**
**JEFF LYDE AND KENNY NASH**
**DEFENDANTS - APPELLANTS**

---

## STATEMENT OF JURISDICTION

The district court denied summary judgment because it found genuine disputes of material fact. ROA.1387. This Court has jurisdiction over an interlocutory qualified-immunity appeal only to decide abstract legal questions; it lacks jurisdiction to review whether the evidence is sufficient to create a fact issue. *Johnson v. Jones*, 515 U.S. 304, 313-20 (1995); *Kinney v. Weaver*, 367 F.3d 337, 346-49 (5th Cir. 2004)("in an interlocutory appeal we cannot challenge the district court's assessments regarding the sufficiency of the evidence—that is, the question whether there is enough evidence in the record for a jury to conclude that certain facts are true."). To the extent this appeal asks the Court to reject Culley's evidence, credit Appellant's evidence, or draw Appellant-favorable inferences, it should be dismissed for lack of jurisdiction.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

FIRST ISSUE: Whether this Court has jurisdiction to reverse the denial of qualified immunity where Appellants' arguments require rejecting the district court's conclusion that genuine disputes of material fact exist and drawing inferences in Appellants' favor.

SECOND ISSUE: Whether, accepting Culley's facts and reasonable inferences, a jury could find that Nash violated the Fourth Amendment by signing and presenting a warrant affidavit that omitted clearly critical exculpatory context and thereby procured Culley's arrest without probable cause.

THIRD ISSUE: Whether, accepting Culley's facts and reasonable inferences, a jury could find that Lyde violated the Fourth Amendment by initiating and continuing a sham investigation, possessing exculpatory information, and causing or directing the omission of that information from the warrant affidavit.

FOURTH ISSUE: Whether, by March 2021, it was clearly established that an officer violates the Fourth Amendment by knowingly or recklessly procuring an arrest warrant through false statements or material omissions necessary to probable cause, and that liability may reach an officer who signs the affidavit as well as an officer who assists in preparing or causes the false or misleading affidavit to be submitted.

## Statement of the Case

This appeal arises from a single order denying qualified immunity to two officers who participated in obtaining an arrest warrant. Although Appellants filed separate briefs, both seek reversal of the same ruling and both depend on the same fundamental premise: that this Court should reject the district court's determination that the summary judgment record contains genuine disputes of material fact. Because many of Appellants' arguments challenge factual inferences rather than legal conclusions, substantial portions of the appeal fall outside this Court's interlocutory jurisdiction. The remainder fails on the merits.

Plaintiff-Appellee Ashley Culley ("Ashley" or "Culley") is gay – openly so. ROA.1250. Defendants-Appellants Sheriff Jeffery Lyde ("Lyde") and Officer Kenny Nash ("Nash") wanted her fired from her job handling IT for the Sheriff's office because of her sexuality. ROA.1250-51. Culley brings a false arrest claim against Lyde, Nash, and Clay County alleging that Lyde directed Nash to write and sign a fraudulent warrant affidavit that accused Culley of tampering with government records. ROA.542-564; ROA.565-584; ROA.609-612.

As part of her job in Clay County, Ashley was responsible for coordinating with the Texas Department of Public Safety ("DPS") for approval of how the Sheriff's Office server and computer network would be setup to comply with DPS requirements for the use of the Criminal Justice Information Services database

("CJIS"). ROA.1248. Government entities that access or manage sensitive information from the US Justice Department need to ensure that their processes and systems comply with CJIS policies for wireless networking, data encryption, and remote access, especially since phishing, malware, and hacked VPNs or credentials are the most common attack vectors used to hack into government networks. ROA.1249.

Culley coordinated with DPS CJIS Technical Auditor Linda Sims on CJIS compliance for the Sheriff's Office. ROA.1249. Clay County was audited in 2016 and 2019, wherein Culley submitted network maps showing that there was only one computer at the Clay County Sheriff's Office which had access to CJIS. ROA.1250. During the 2016 and 2019 audits, Clay County did not utilize Mobile Data Terminals ("MDTs"), such as laptops, tablets, or smart phones to access CJIS. ROA.1250; ROA.1268-70.

Lyde won the election for Clay County Sheriff in 2020. ROA.1250. Shortly after his victory, Lyde fired the Jail Captain Administrator, who was an openly gay woman like Culley. ROA.1250. Lyde also decided to transition the Clay County Sheriff's Office to using COPsync Software along with Kologik to access CJIS on MDTs such as laptops or smart phones. ROA.1251. At the time, Culley informed Lyde that this transition would require an extensive overhaul of the network to reach CJIS compliance, including adding 10 to 12 additional desktops to the current site

map. ROA.1251-57. Sims substantiated Culley's analysis by emailing Lyde to inform him that the network maps would need to be updated as part of this transition. ROA.1254. A Kologik employee also notified Lyde that he would need to get DPS approval that the Sheriff's Office was CJIS compliant to add mobile equipment with access to TLETS through COPsync and Kologik. ROA.1251.

Lyde then spoke with Sims and determined that the network would require upgrades so that Kologik and COPsync would work with the new MDTs. ROA.1253-54. Sims informed Lyde that they could move forward with adding the new MDTs to the system but that, until the network is segmented, they would not get DPS approval because they would not be CJIS compliant. ROA.1253-54. Lyde then sent an email to multiple people, including Culley, stating that they needed to separate from the rest of the network to gain CJIS compliance. ROA.1253-54. In response to this email, Culley again stated that changing the network configuration to add Kologik and COPsync so that MDTs could be utilized would take Clay County out of CJIS compliance with DPS. ROA.1255. Captain Evans, who helped develop a new network site map, then responded acknowledging that the issue DPS had with the new configuration was that the data would be cloud based. ROA.1255.

On February 8, 2021, Sims sent Lyde an email, explaining that the ten to twelve desktops needed to be included in the current network map, when they had not previously been included, because Clay County was now going to have CJIS

data on them due to using Kologik/COPsync. ROA.1259-60; ROA.1274. In other words, due to transitioning to Kologik and COPsync to add MDTs, the network maps now needed to be updated meaning the maps would now be different than the previous network maps Culley submitted in 2016 and 2019 for DPS approval of CJIS compliance. ROA.1259-60; ROA.1274.

On February 11, 2021, Lyde sent an email to Wichita County Sheriff David Duke with a subject title of "Culley," stating in full, "How goes the war today?" ROA.1256. On February 26, 2021, Sims sent an email to multiple involved agencies as well as Clay County personnel, including Lyde, which explained that Clay County was adding cloud based Kologik/COPsync and that twelve desktop computers would have access to this new Kologik software. ROA.1256-57.

A reasonable jury could find that Lyde then directed his only investigator, Nash, to write an arrest affidavit for Culley so that they could have her arrested and end her contract performing IT work for Clay County. ROA.1257-58. Nash then called Sims for the first time on March 4, 2021, which led Sims to email Lyde asking why Nash had called her. ROA.1258. Lyde responded that Nash was calling regarding a criminal investigation of Culley. ROA.1259.

On March 22, 2021, Nash wrote and signed off on an arrest affidavit for Culley for the crime of tampering with a governmental record. ROA.1262; ROA.1244-46. The warrant affidavit signed and submitted by Nash contained a

material omission of exculpatory evidence from Sims's February 8 email that was clearly critical to a finding of probable cause – namely, that the reason the new network site map was different from previous site maps is due to the pending transition to Kologik and COPsync to add MDTs. ROA.1262; ROA.1244-46.

A reasonable jury could find that Lyde and Nash knew the charges were baseless, as after Ashley turned herself into the jail on the warrant, neither Lyde nor Nash turned any paperwork over to the prosecutor's office, allowing the statute of limitations on her criminal case to run without the case being filed. ROA.1264-65. However, based on her arrest for this baseless criminal charge, Ashley was relieved of her duties as the IT administrator with Clay County. ROA.1264. After Lyde sent the arrest warrant based on Nash's false and misleading affidavit to the sheriff of Wichita County, Texas, she was then placed on administrative leave in Wichita County as a result and terminated shortly thereafter. ROA.1263-64.

Defendants filed motions for summary judgment based on qualified immunity and the district court denied qualified immunity because the court found that the record contains genuine disputes of material fact precluding qualified immunity. ROA.1387. Defendants appealed. ROA.1391-1397.

## SUMMARY OF THE ARGUMENT

The judgment should be affirmed, or the appeal dismissed in substantial part for lack of jurisdiction.

First, Appellants' briefs challenge the district court's view of the facts. Nash argues that there is no evidence he knew about Sims's February 8 email, that any inference of knowledge is unsupported, and that his conduct was objectively reasonable. Lyde argues that he did not assist in preparing the affidavit, that Sims's February 8 email was not material, that Nash and Lyde reasonably relied on Evans's contrary account, that the "end of life" language was not misleading, and that motive was immaterial. Those arguments require this Court to reject the district court's factual inferences and credit Appellants' evidence over Culley's. *Johnson* and *Kinney* bar that approach in this interlocutory appeal.

Second, even if the Court reaches the merits, Culley's version states a Fourth Amendment violation under *Franks*, *Melton*, *Winfrey*, *Terwilliger*, and *Guerra*. Appellants' argument that *Franks* exists only in the criminal context is foreclosed by the Fifth Circuit cases applying Franks in Section 1983 civil damages suits. Nash was the affiant. The affidavit's probable cause theory depended on treating the difference between the earlier maps and the current map as evidence of falsification. But Sims's February 8 email explained that the current map had to change because of the new Kologik/COPsync/MDT configuration. Further, Sims told Nash over the

phone that Culley was not responsible for answering the audit questions on which Nash based his affidavit. As the district court held, a reasonable jury could find that omitting that context made the affidavit materially misleading. And because the omitted context was "clearly critical" to probable cause, recklessness may be inferred.

Third, the district court found that Lyde's liability is not based on respondeat superior. As the district court held, a jury could find that Lyde personally participated: he initiated the investigation, possessed the February 8 exculpatory explanation, continued to communicate about the investigation after it began, responded when Sims asked why Nash was calling her, and allegedly directed Nash to submit an affidavit omitting material facts. Under *Melton*, *Terwilliger*, and *Guerra*, an officer who assists in preparing or causes a false or misleading warrant affidavit may be liable even if he did not sign it.

Fourth, the law was clearly established by March 2021. The right is not defined at a high level of generality. It is the particular Fourth Amendment right not to be arrested on a warrant procured by an officer who knowingly or recklessly includes false statements or omits clearly critical exculpatory information necessary to probable cause. *Franks*, *Hale*, *Melton*, *Winfrey*, *Terwilliger*, and *Guerra* gave fair warning.

## Argument

## **Standard of Review**

In this interlocutory appeal from the denial of qualified immunity, this Court may consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment. *Kinney*, 367 F.3d at 348.

## **Law for Summary Judgment**

A grant of summary judgment is proper if and only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). A fact is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding whether there are genuine disputes of material fact precluding summary judgment, a court must review "all of the evidence introduced," but "all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

## I. This Court lacks jurisdiction to revisit the district court's factual determinations and identification of genuine fact disputes.

Appellants appeal should be dismissed in substantial part because this Court does not have jurisdiction to reverse the denial of qualified immunity where Appellants' arguments require rejecting the district court's conclusion that genuine disputes of material fact exist and drawing inferences in Appellants' favor. Nash and Lyde repeatedly characterize the district court's inferences as unsupported. But the court identified the record basis for them: the technology-transition emails, the February 8 email, Lyde's ongoing communications, Nash's call to Sims, Sims's question to Lyde, Lyde's response, the wording of the affidavit, and the competing evidence about whether the additional computers previously accessed CJIS. ROA.1374-86.

The district court identified factual disputes at every step of the qualified-immunity analysis. It found disputes over Lyde's motive, his knowledge of the network-map explanation, whether he ordered an investigation he knew was fraudulent, whether he continued participating after initiating the investigation, whether he directed Nash in preparing the warrant affidavit, whether Nash omitted exculpatory context, whether Sims's February 8 email was material, whether the affidavit was crafted to avoid directly stating a falsehood, and whether a corrected affidavit would support probable cause. ROA.1380-86. Appellants' briefs cannot be resolved without deciding those disputes in their favor.

Before reaching the merits, this Court must identify the limited scope of its jurisdiction. This interlocutory appeal arises from the denial of qualified immunity at summary judgment. The district court did not deny qualified immunity because it misunderstood qualified immunity law. It denied qualified immunity because the court found that the record contains genuine disputes of material fact precluding qualified immunity. ROA.1387. The district court cannot resolve those disputes in Appellant's favor at summary judgment, and this Court cannot do so on interlocutory appeal. *Johnson*, 515 U.S. at 313-20; *Kinney*, 367 F.3d at 346-49. The appeal therefore fails at the threshold to the extent it asks this Court to decide what Appellants knew, what inferences the record permits, whether the February 8 email was actually exculpatory, or whether the corrected affidavit would support probable cause under Appellants' version of the evidence – as the District Court found all of these material fact issues to be genuinely disputed based on competing inferences from the record that must be taken in the light most favorable to Plaintiff-Appellee Culley. ROA.1379-1386.

a. <u>The factual disputes are material.</u>

The district court did not conclude that Defendants' conduct violated clearly established law under an undisputed factual record. Instead, the district court denied qualified immunity because the summary judgment record contained multiple genuine disputes of material fact that bear directly on probable cause, materiality,

intent, and personal involvement. ROA.1379-1386. Specifically, the district court found evidence from which a reasonable jury could conclude:

1. that the February 8, 2021 email from DPS auditor Linda Sims was materially exculpatory;
2. Lyde possessed it;
3. Lyde remained involved in the investigation after it was opened;
4. a jury could infer Nash knew about the February 8 email;
5. the affidavit omitted information contained in that email;
6. Nash's affidavit was drafted in a manner designed to avoid directly stating a known falsehood;
7. Lyde may have directed, influenced, or participated in the preparation of the affidavit despite not being the affiant;
8. the omitted information was necessary to a probable-cause determination; and
9. inclusion of the information would defeat probable cause.

ROA.1379-1386.

These are not random factual disputes, but instead are material, as they go directly to the three *Franks* elements: falsity/omission, recklessness, and materiality to probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56 (1978); *see also Winfrey v. Rogers,* 901 F.3d 483, 494 (5th Cir. 2018). Appellants attempt to recast

the district court's factual findings as immaterial. But the district court identified disputes going to the very elements of a *Franks* claim. ROA.1379-1387. Whether Defendants knew of the exculpatory information, whether they omitted it, and whether inclusion would have defeated probable cause are not peripheral facts. They are the facts on which constitutional liability turns. *Franks*, 438 U.S. at 155–56; *see also Winfrey*, 901 F.3d at 494.

The district court concluded that, viewing the evidence in the light most favorable to Culley, a reasonable jury could find that inclusion of the omitted information would have defeated probable cause. ROA.1383-86. Whether those conclusions are ultimately correct is not the question before this Court. The question is whether the district court identified record evidence creating genuine disputes. Once such disputes exist, this Court lacks jurisdiction to decide whose version of the facts is more persuasive – yet that is precisely what both appellants ask this Court to do. *Johnson*, 515 U.S. at 313-20; *Kinney*, 367 F.3d at 346-49.

Nash argues that he never learned of the February 8 email, that no evidence permits an inference that he knew of its contents, and that the district court improperly inferred such knowledge. But the existence of competing inferences from circumstantial evidence is the hallmark of a jury question. Nash's argument requires this Court to reject the district court's conclusion that a reasonable jury could infer knowledge from the summary judgment record and instead adopt Nash's

preferred interpretation of the evidence. Likewise, Lyde repeatedly argues that the omitted information was immaterial, that the investigation was legitimate, that the network-map discrepancies independently established probable cause, that the February 8 email lacked significance, and that no evidence connects him to the affidavit. Each argument depends upon accepting defendant's view of contested facts and rejecting contrary inferences the district court found a reasonable jury could draw.

The Supreme Court and this Court have repeatedly explained that appellate jurisdiction does not extend so far. *Johnson*, 515 U.S. at 313-20; *Kinney*, 367 F.3d at 346-49. Defendants may not convert factual disagreements into legal issues simply by labeling them "qualified immunity" arguments. An appellate court reviewing the denial of qualified immunity must accept the facts the district court assumed in denying immunity and determine only whether, under those facts, defendants violated clearly established law. *Id*.

Accordingly, to the extent Appellants challenge the district court's determination that genuine disputes of material fact exist, this Court lacks jurisdiction and should dismiss those portions of the appeal. *Johnson*, 515 U.S. at 313-20; *Kinney*, 367 F.3d at 346-49. At a minimum, the Court must evaluate qualified immunity using the plaintiff favorable version of the facts accepted by the district court rather than the competing narrative advanced by Appellants. *Id*.

## II. Accepting Culley's version, Appellants violated Culley's Clearly Established Rights Under the Fourth Amendment.

A. <u>Nash violated the Fourth Amendment.</u>

Nash was the affiant. ROA.1246. The Supreme Court held that an officer may violate the Fourth Amendment when, in connection with an application for a warrant, he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause." *Franks*, 438 U.S. at 155. The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *Melton v. Phillips,* 875 F.3d 256, 262 (5th Cir. 2017) (en banc). The Fifth Circuit has also found that a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. *Kohler v. Englade,* 470 F.3d 1104, 113 (5th Cir. 2006). Likewise, the Fifth Circuit explained that the intentional or reckless omission of material facts from a warrant application may also amount to a Fourth Amendment violation. *Id.*; *See Hale v. Fish,* 899 F.2d 390, 400 n.3 (5th Cir. 1990).

Under *Franks, Winfrey, and Melton*, an officer violates the Fourth Amendment when he knowingly or recklessly signs or presents a warrant affidavit containing false statements or material omissions necessary to probable cause. The omitted context here was the core exculpatory fact: the DPS auditor had explained

why the current map would show more computers than the 2016 and 2019 maps. ROA.1274. Included in a corrected affidavit, that fact would have told the magistrate that the difference in maps resulted from a new Kologik/COPsync/MDT configuration, not from Culley falsifying prior records. ROA.1384-85.

Further, Nash was told over the telephone by DPS Auditor Sims that Culley was not responsible for answering the audit questions and that she only included in her network site map information told to her by Linda Byrd and Kerri Heaton. ROA.1271-72. This is substantiated by the fact that on both of the 2016 and 2019 audits, the Terminal Agency Coordinator (TAC) is listed as Lynda Byrd. ROA.1276; ROA.1292.

The district court held that, "Reading the underlying evidence in the light most favorable to Culley, no judge would have found probable cause for Culley's arrest if the context of the February 8 email had been included." ROA.1385. It also held that the affidavit's language supports a reasonable inference that it was crafted to avoid directly stating a falsehood about end-of-life equipment being left off the 2016 or 2019 diagrams. ROA.1385.

#### i. Nash's "no knowledge" and "reasonable reliance" arguments are for the jury.

Nash argues he did not receive the February 8 email. But the district court did not rely on receipt alone. It relied on reasonable inferences from the entire record. Lyde and Evans received the email. ROA.1375. Nash spoke with Evans and called

Sims. ROA.1376. Sims then asked Lyde why Nash was calling, and Lyde said Nash was calling about a criminal investigation of Culley. ROA.1376. There were genuinely disputed facts regarding what information was provided by Lyde to Nash and the extent of Lyde's involvement in the investigation with Nash. ROA.1385. The affidavit's wording itself supported an inference of knowledge or reckless avoidance. ROA.1385. The record supports the inferences that the district court drew when looking at the evidence in the light most favorable to Culley.

Nash not only had the information from the February 8 email, but also from his phone call with Linda Sims. The record shows that Sims called Nash and he asked her whether or not a third-party vendor should have known about CJIS requirements. ROA.1270. Sims answered that in her opinion, yes, any vendor should know about the requirements. ROA.1270. Nash asked Sims something regarding Ashley Culley – the exact specifics of the question Sims does not now remember. ROA.1270. However, Sims does remember explicitly stating to Nash that Ashley did not attend any of the audits or provide answers for the audits – as she was not the TAC. ROA.1270-72. Nash did not ask Sims about the network diagrams; however, Sims does remember telling Nash that, according to the TAC Linda Byrd, prior to the changes that were being made at that time, no other computers were accessing CJIS data. ROA.1270. In the Affidavit for Arrest Warrant and Detention ("Affidavit") for Culley's arrest, Nash states,

> "Your affiant then conducted a telephone interview with the CJIS Technical Auditor from the Texas Department of Public Safety. She was identified as Linda Sims. Sims stated that Culley was the person who was responsible for completing the network diagrams (site maps) for Clay County Sheriffs Office. Sims stated that the June 3rd, 2020 audit did not reflect the 12 work stations that were shown to be in place with the newly submitted diagram. Sims also stated that the 2019 audit documents that were submitted clearly stated that the only computer that contained Criminal Justice Data was the TLETS computer. This directly contradicts what is currently in place within the Clay County Sheriffs Office. Sims stated that Culley was the person who drew the network diagram and is the one responsible for the submission in regards to the audit. Sims also stated that Culley would know what would, and would not, be in compliance. Sims stated that submitting a network diagram which contained "end of life equipment" would cause an agency to not pass the audit. When your affiant asked Sims if Culley would be aware of this, Sims stated that Culley would be. Sims stated that a reason [*sic*] someone could intentionally leave these end of life items off of the map is due to the fact that they would know they would not pass the audit if they were listed."

ROA.1245-46.

However, Sims states in her Declaration that this paragraph in the Affidavit misrepresents her and Nash's conversation. ROA.1271. First, there was no audit completed on June 3, 2020. ROA.1271. The agency was audited every three years, which occurred in 2016 and 2019. ROA.1271. The next audit was not to occur until 2022. ROA.1271. Second, Nash's affidavit makes it sound like the 12 work stations that were not on the 2019 audit should have been in that audit; however, these work stations that were on the newly submitted diagram were not accessing CJIS data in

2019 and thus were not required to be on the network diagram. ROA.1271. Further, Sims made it clear during her phone call with Sergeant Nash that Ashley Culley was not the person who provided the information for the audit – that was the TAC, Linda Byrd, and the Dispatch Supervisor, Kerri Heaton. ROA.1271. Additionally, end of life equipment had not been left on network diagrams. ROA.1271.

In approximately 15 years of being a CJIS Technical Auditor for DPS, Sims has never heard of anyone lying about a network diagram during an audit. ROA.1271-72. This is likely because the goal is to gain compliance – not punish those who are not in compliance. ROA.1272. If an agency is found to be out of compliance, the consequence is simply to send a letter stating they are out of compliance. ROA.1272. The agency then has thirty days to either (1) get into compliance, or (2) if there is some reason, such as budgetary concerns, that prohibit compliance, then the agency simply must work out a plan to gain compliance. ROA.1272. The agency is not punished. ROA.1272.

Sims states in her Declaration that she is unaware of what the benefit or motivation could have possibly been for Ashley Culley to lie about what computers had CJIS access on a network diagram. ROA.1272. As Sims states, there simply is no reason to do so. ROA.1272. Further, Ashley is not the one that provided the answers to the audits on which computers had access to CJIS data, and she would simply be making the network diagram based off the information provided by Linda

Byrd and Kerri Heaton. ROA.1272. Sims informed Sergeant Nash of this during their telephone call on March 3, 2021. ROA.1272.

A jury may accept Nash's denial, but this Court cannot require that result on interlocutory appeal. Accordingly, this Court should affirm.

B. Lyde violated the Fourth Amendment.

The Fifth Circuit applies the requirement that an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*. *Melton*, 875 F.3d at 263. An officer who has provided information for the purpose of its being included in a warrant application has assisted in preparing the warrant application and may be liable, but an officer who has not provided information for the purpose of its being included in a warrant application may be liable only if he signed or presented the application. *Melton*, 875 F.3d at 262. *Franks* liability can reach not only those fully responsible for preparing a warrant application, but also those who "deliberately or recklessly provide[ ] false, material information for use in an affidavit." *Id.* at 264. In this Circuit, a law enforcement officer "must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*." *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021); quoting *Melton*, 875 F.3d at 263. If an officer does not present or sign the affidavit, liability attaches only if "he helped prepare the complaint by providing information for use in it." *Id.*; quoting

*Melton*, 875 F.3d at 264. The analysis must consider the role played by each defendant. *Id*.

In *Terwilliger*, Defendant Reyna neither signed nor swore to the affidavit in question. *Terwilliger*, 4 F.4th at 284. The Plaintiffs plead generally that Reyna, among others, "caused an affidavit against each Plaintiff to be presented." *Id*. The Court found that such conclusory language was insufficient, standing alone. *Id*. However, this language was supported when, "in more detail, the Plaintiffs plead that Reyna was provided with evidence both from the scene and interviews of attendees. But, acting contrary to the information provided to him, he stated that "all bikers wearing colors" should be arrested. Accordingly, and treating his function as that of an investigator, Reyna generated the basic facts set out in the probable cause affidavit." *Id*. Because Reyna provided the information to the affiant and "knew or recklessly disregarded the fact that, based on the exculpatory evidence he had learned, probable cause did not exist to arrest some individuals potentially fitting the warrant's criteria," the Court found the allegations sufficient to tie him to potential *Franks* liability. *Id*.

Here, Lyde was aware that Culley had not committed a crime due to his extensive communications with both Culley and Linda Sims from DPS. ROA.1251-61. On February 8, 2021, Linda Sims sent an email to Lyde, Evans, Renee Weaver, and Ashley stating the reason the 10-12 desktops needed to be included in the current

network map and had not previously been included was because Clay County was now going to have CJIS data on them due to now having Kologik/COPsync. ROA.1274. Sims stated that the agency configuration in the 2016 and 2019 audits was completely different from what Clay County was now proposing. ROA.1274. Despite this information, Lyde, knowing there was not probable cause that a crime was committed, directed his subordinate officer, Nash, to investigate, write, and submit to the Judge a sham affidavit knowing it was not supported by probable cause for the purpose of wrongfully and illegally arresting Culley. ROA.1245-46; ROA.1274.

Just as in *Terwilliger* where Defendant Reyna did not actually write the affidavit but instead provided false information to the officer who did write the affidavit, Lyde provided false information to Nash to write the sham affidavit, to wit: that a crime had been committed regarding the network diagrams. *Terwilliger*, 4 F.4th at 284. Lyde received information that there was not probable cause for Plaintiff's arrest from Linda Sims on February 8, 2021, in her email. ROA.1274. It is unreasonable to believe Lyde that he had no more involvement in the filing of an arrest affidavit for Culley when he was the one that initiated the sham investigation to begin with. The reasonable inference from the evidence that a jury could make is that Nash would also have gained information from Lyde, regarding the investigation Nash was doing for Lyde – about exculpatory evidence from Linda

Sims by way of the February 8, 2021, email she sent to Lyde prior to the PC Affidavit was filed. ROA.1274; *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877. This is supported by the fact that Nash noted in his affidavit that he provided Lyde with an update on the investigation. ROA.1118. The reasonable inference is that when Nash spoke to Lyde about what was happening, Lyde told Nash about that email – which was directly relevant to the investigation. *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877.

Further, Lyde sent an email asking, "how goes the war today" with the title of the email being "Culley". ROA.1256. The reasonable inference from this evidence – which must be taken in the light most favorable to Plaintiff – is that Lyde was involved in the sham investigation and knew the affidavit presented to the Court by Nash was based on false statements, misleading statements, and a lack of probable cause. ROA.1245-46; ROA.1274. *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877. Accordingly, this Court should affirm the district court's finding that the summary judgment evidence and all reasonable inferences taken from that evidence support Culley's claim against Lyde for directing Nash to present a sham arrest affidavit so that Culley would be falsely arrested in violation of her Fourth Amendment rights. *Terwilliger*, 4 F.4th at 284; *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877.

The Fifth Circuit recently explained that facts extremely analogous to the present case supported a false arrest claim. *Guerra v. Castillo*, 82 F.4th 278, 286 (5th Cir. 2023). In *Guerra*, a patrol sergeant (Guerra) filed a lawsuit alleging the chief of

police (Castillo) engaged in a scheme with other officers to have him fired and arrested on bogus charges. *Id*. at 282. The Fifth Circuit, in finding the complaint sufficiently pleaded a cause of action for false arrest to defeat a Rule 12 motion to dismiss, found that *Terwilliger* controlled the outcome of the case. *Id*. at 287. The Fifth Circuit explained that "Guerra's complaint presents Castillo as the sole moving force behind a deliberate, long-term conspiracy to create and file affidavits Castillo knew to be false, with the purpose of exploiting the criminal justice system to arrest, detain, and torment Guerra for crimes Castillo knew he did not commit. Castillo, moreover, ordered the sham investigations that served as the bases for the false affidavits and pushed the investigations forward despite knowing Guerra was innocent." *Id*. **This is exactly what the evidence shows in this case** – Lyde ordered a sham investigation that served as the bases for the false affidavit submitted by Nash despite Lyde knowing that Culley was innocent because of the information he received from Linda Sims. ROA.1245-46; ROA.1274. The Fifth Circuit explained that in *Terwilliger*, it "emphasized Reyna's causal role as the driving force behind the false affidavits and arrests, alongside the fact he was presented with evidence that at least some bikers wearing colors should not be arrested, but, "acting contrary to the information provided to him," told his subordinates and colleagues that all bikers wearing colors should be arrested." *Id*. at 287-88. Here, Lyde was the driving

force behind Nash writing and submitting the false affidavit, "contrary to the information provided to him" by Linda Sims. ROA.1245-46; ROA.1274.

When viewed in the light most favorable to Plaintiff, the summary judgment evidence gave rise to the reasonable inference that Lyde directed his subordinate to write a sham arrest affidavit, provided his subordinate with false information to be utilized in the sham affidavit, and then allowed and directed his subordinate to file the sham affidavit full of false and misleading information provided by Lyde with the Court knowing it would result in Culley's false arrest. ROA.1245-46; ROA.1274. Thus, this Court should affirm the district court's finding that the summary judgment evidence supports a violation of Plaintiff's Fourth Amendment rights against Lyde. *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877; *Franks,* 438 U.S at 155; *Melton,* 875 F.3d at 262; *Kohler,* 470 F.3d at 1113; *Hale*, 899 F.2d at 400 n.3; *DeLeon v. City of Corpus Christi*, 345 F. App'x 22, 23 (5th Cir. 2009)." *Terwilliger*, 4 F.4th at 284; *Winfrey*, 901 F.3d 483; *Guerra*, 82 F.4th 278.

Further, the false statements in the affidavit must have been "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. This requires the Court to assess whether probable cause existed to arrest Plaintiff without the misstatements and omissions in the affidavit. The district court found that, "Reading the underlying evidence in the light most favorable to Culley, no judge would have found probable

cause for Culley's arrest if the context of the February 8 email had been included." ROA.1385. Accordingly, this Court should affirm.

C. Appellants' new argument that *Franks* does not support a civil § 1983 claim is forfeited and wrong.

Appellants also argue, for the first time on appeal, that *Franks v. Delaware* is limited to criminal suppression proceedings and cannot support a civil § 1983 false-arrest claim. Doc. 33, Lyde App. Br., pp. 26–29; Doc. 37, Nash App. Br., p. 32 (adopting the argument articulated in Appellant Lyde's brief). This argument fails twice.

First, this argument was not preserved. A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (*See United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017) ("Failure to raise a claim to the district court 'constitutes a forfeiture, not a waiver, of that right for the purposes of appeal.'")) (quoting *United States v. Chavez-Valencia*, 116 F.3d 127, 130 (5th Cir. 1997)). In the district court, Defendants litigated this case as a *Franks* based Fourth Amendment claim. Nash expressly described Culley's claim as one brought "[u]nder the legal theory provided in *Franks v. Delaware*," and argued that the evidence failed to show a knowing, intentional, or reckless falsehood or omission. ROA.1092-93; ROA.1100. Nash even pleaded the elements that plaintiffs must establish to prove a

*Franks* claim ROA.1100-01. Nash literally undermined his own argument when he pleaded in his summary judgment brief how the civil claim was made, stating,

> The Fifth Circuit has extended the *Franks* standard to arrest warrants. Because *Franks* was a criminal lawsuit, the Fifth Circuit reasoned that its application "is a bit academic when . . . applied to civil cases." The Fifth Circuit went on to state that "Because 'a warrant is not a prerequisite to a lawful arrest,' the ultimate inquiry for a Fourth Amendment false arrest claim is whether the arrest was reasonable." As such, the Fifth Circuit added an additional step to the traditional *Franks* analysis that asks "whether 'any reasonably competent officer possessing the information each officer had at the time he swore [his] affidavit could have concluded that a warrant should issue.'"

ROA.1102 (Footnotes omitted).

Lyde also explained what a civil plaintiff must show for a *Franks* claim without any argument that *Franks* somehow does not apply. ROA.1054-55.

Defendants never asked the district court to hold that *Franks* is categorically unavailable in a civil § 1983 action. They therefore forfeited that argument.

Second, the argument is contrary to binding Fifth Circuit law (as articulated by Defendants in their district court briefing). The Fifth Circuit has repeatedly recognized civil § 1983 claims based on false statements or material omissions in warrant affidavits. In *Winfrey v. Rogers*, the Court applied *Franks* in a § 1983 false-arrest case and held that a plaintiff may establish a Fourth Amendment violation by showing that the warrant affidavit contained false statements or material omissions made knowingly, intentionally, or recklessly and necessary to probable cause. 901 F.3d 483, 494–95 (5th Cir. 2018). And in *Terwilliger v. Reyna* and *Guerra v.*

*Castillo*, the Court again applied *Franks* in civil § 1983 false arrest cases. 4 F.4th 270, 283–85 (5th Cir. 2021); 82 F.4th 278, 286–88 (5th Cir. 2023).

The district court followed that settled law when it found that an officer may be liable under *Franks* when he assists in preparing, presents, or signs a warrant application containing false statements or material omissions made with reckless disregard for the truth and necessary to probable cause. ROA.1378-79. Appellants' contrary theory would require this Court to disregard its own binding precedent. Defendants cannot obtain qualified immunity by pretending those cases do not exist. Whatever *Franks* originally held in the criminal suppression context, the Fifth Circuit has long since applied its Fourth Amendment rule in civil § 1983 cases challenging arrests procured through materially false or misleading warrant affidavits. Accordingly, Appellants' new "no civil *Franks* claim" argument is both forfeited and foreclosed.

## III. The law was clearly established.

As the district court stated in the Order,

> At the time of the incident, it was clearly established that filing—or pushing subordinates to file—false affidavits contrary to known exculpatory evidence violates clearly established law. *Terwilliger*, 4 F.4th at 285; *Winfrey*, 901 F.3d at 494 (affirming that there is a constitutional right to be free from police arrest without a good faith showing of probable cause). Officers of reasonable competence would not disagree on whether such conduct is legal. *Malley*, 475 U.S. at 341.

ROA.1386-87.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Dyer,* 955 F.3d at 509 (quoting *Reichle v. Howards,* 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (cleaned up)). Plaintiff need not identify a case "directly on point," but "existing precedent" must "place[ ] the statutory or constitutional question beyond debate." *Id.* (quoting *Morgan v. Swanson,* 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011))). That precedent, moreover, must "define[ ] the contours of the right in question with a high degree of particularity." *Id.* (quoting *Morgan,* 659 F.3d at 372. In sum, "the salient question" we ask at prong two is whether the state of the law at the time of the incident "gave [Defendant Lyde or Defendant Nash] fair warning that [his] alleged treatment of [Ms. Culley] was unconstitutional." *Id.* (quoting *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002); *accord Morgan,* 659 F.3d at 372 ("The *sine qua non* of the clearly-established inquiry is 'fair warning.' ") (citing *Hope,* 536 U.S. at 741, 122 S.Ct. 2508)).

It is clearly established that warrants may not be issued, absent probable cause. *U.S. CONST. amend. IV.* The Supreme Court in *Franks* addressed the situation in which information in an affidavit—which establishes probable cause supporting the issuance of a warrant—is knowingly falsely included by the affiant. *Franks,* 438

U.S. at 156. The Fifth Circuit has recognized that a *Franks* violation is a Fourth Amendment violation that states a Section 1983 claim. *See Kohler,* 470 F.3d at 1113. Likewise, the Fifth Circuit explained that the intentional or reckless omission of material facts from a warrant application may also amount to a Fourth Amendment violation. *Id*.; See *Hale*, 899 F.2d at 400 n.3.

Officers who knowingly or with reckless disregard for the truth provide false information to secure arrest warrants violate the Constitution. *Terwilliger*, 4 F.4th at 281; citing *Franks*, 438 U.S. at 171. The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *Id*.; *See Melton,* 875 F.3d at 262. Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits. *Id*. citing *Michalik v. Hermann,* 422 F.3d 252, 258 n.5 (5th Cir. 2005).

The Fifth Circuit applies the requirement that an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*. *Melton*, 875 F.3d at 262-64. An officer who has provided information for the purpose of its being included in a warrant application has assisted in preparing the warrant application and may be liable, but an officer who has not provided information for the purpose of its being included in a warrant application may be liable only if he signed or presented the application. *Id*. at 262. *Franks* liability can reach not only those fully responsible for preparing a warrant

application, but also those who "deliberately or recklessly provide[ ] false, material information for use in an affidavit." *Id.* at 264. In this Circuit, a law enforcement officer "must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*." *Terwilliger*, 4 F.4th at 283; quoting *Melton*, 875 F.3d at 263. If an officer does not present or sign the affidavit, liability attaches only if "he helped prepare the complaint by providing information for use in it." *Id.*; quoting *Melton*, 875 F.3d at 264. The analysis must consider the role played by each defendant. *Id.*

In *Winfrey*, the Fifth Circuit found the plaintiff presented a Fourth Amendment claim against sheriff's deputy, on claim alleging that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in deputy's affidavits. *Winfrey*, 901 F.3d at 491-92. That is precisely what occurred in this case when Defendants intentionally and knowingly including false and misleading statements and omitting materially exculpatory information in an arrest affidavit for Ms. Culley and then presenting it to the Court for a warrant. ROA.1245-46; ROA.1270-72; ROA.1274. Accordingly, this constitutional violation was clearly established. *Winfrey*, 901 F.3d at 491-92

Additionally, "in an obvious case, general standards can 'clearly establish' the answer, even without a body of relevant case law." *Crane v. City of Arlington, Texas*, 50 F.4th 453, 467 (5th Cir. 2022); *See Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir.

2021) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," *Hope,* 536 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

At the time Defendants intentionally and knowingly included false and misleading statements and omitted materially exculpatory information in an arrest affidavit for Ms. Culley and then presented it to the Court for a warrant, the law was clear that it is unreasonable for a police officer to knowingly or with reckless disregard for the truth provide false information or make material omissions to secure arrest warrants. ROA.1245-46; ROA.1270-72; ROA.1274; *Terrebonne Par. Sch. Bd.,* 310 F.3d at 877; *Franks,* 438 U.S. at 156; *Kohler,* 470 F.3d at 1113; *Hale,* 899 F.2d at 400 n.3; *Melton,* 875 F.3d 256; *Winfrey,* 901 F.3d 483; *Michalik,* 422 F.3d at 258 n.5.

Here, this is an obvious case. *Franks,* 438 U.S. at 156; *Kohler,* 470 F.3d at 1113; *Hale,* 899 F.2d at 400 n.3; *Melton,* 875 F.3d 256; *Winfrey,* 901 F.3d 483. The Supreme Court has explained that in an "obvious case," the unlawfulness of conduct is sufficiently clear even though existing precedent does not address similar

circumstances. *Hope*, 536 U.S. at 738. (noting in a case where the Eighth Amendment violation was "obvious" that there need not be a materially similar case for the right to be clearly established). It is obvious here, that intentionally and knowingly including false and misleading statements and omitting materially exculpatory information in an arrest affidavit for Ms. Culley and then presenting it to the Court for a warrant is a violation of the Constitution. ROA.1245-46; ROA.1270-72; ROA.1274; *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877; *Franks*, 438 U.S. at 156; *Kohler*, 470 F.3d at 1113; *Hale*, 899 F.2d at 400 n.3; *Melton*, 875 F.3d 256; *Winfrey*, 901 F.3d 483. Thus, this is an obvious case which is clearly established under *Hope*. *Hope,* 536 U.S. at 738. Accordingly, the law was clearly established in March of 2021.

Accordingly, Defendants violated clearly established law and as the district court found, they are not entitled to qualified immunity.

## PRAYER AND CONCLUSION

Appellee asks this Court to AFFIRM the district court and to remand this case so that it may proceed to trial. Appellee asks for any other relief to which she may be justly entitled.

Respectfully Submitted,

/s/ James P. Roberts
James P. Roberts
SBOT: 24105721
**Palmer Perlstein**

15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: (214) 2987-4100
Email: james@palmerperlstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, that an exact copy of Plaintiff-Appellant's Brief was served via ECF to counsel for the Defendants-Appellees. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1.

*<u>/s/ James P. Roberts</u>*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) because:

- This brief contains 9,101 words with no exclusions under Rule 32(f) accounted for;

  This brief also complies with the typeface requirements of Rule 32(a)(5) and the type requirements of Rule 32(a)(6) because:

- This brief has been prepared in Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text and 12-point font for the footnotes.

*<u>/s/ James P. Roberts</u>*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**